**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 21-10698-tmd-11** |
| **WC MET CENTER, LLC,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

**TRUSTEE'S EMERGENCY MOTION FOR AUTHORITY TO**
**SELL DEBTOR'S AND ESTATE'S INTERESTS IN IMPROVED REAL**
**PROPERTY AND IMPROVEMENTS LOCATED AT 7401 E. BEN WHITE BLVD.,**
**AUSTIN, TEXAS 78741, 8201 E. RIVERSIDE DR., AUSTIN, TEXAS 78744, AND**
**7620 METRO CENTER DR., AUSTIN, TEXAS 78744, FREE AND CLEAR OF ALL**
**LIENS, CLAIMS, AND ENCUMBRANCES AND PROVIDING RELIEF PURSUANT**
**TO 11 U.S.C. §§ 363(B), (F), AND (M) AND BANKRUPTCY RULES 2002 AND 6004**

Randolph N. Osherow, not individually but in his capacity as the duly appointed and acting chapter 11 trustee herein (in such capacity, the "**Trustee**"), for and on behalf of WC Met Center, LLC (the "**Debtor**"), hereby moves (this "**Motion**") for authorization to sell the Debtor's and its bankruptcy estate's ("**Estate**") interests in improved real property and improvements located at 7401 E. Ben White Blvd., Austin, Texas 78741, 8201 E. Riverside Dr., Austin, Texas 78744, and 7620 Metro Center Dr., Austin, Texas 78744, with such sale free and clear of all liens, claims, and encumbrances, the assumption and assignment of certain executory contracts listed on Debtor's Schedule G (Docket #16, pgs. 18 and 19) and providing relief pursuant to 11 U.S.C. §§ 363(b), (f), and (m) and 365 and Fed. R. Bankr. P. 2002 and 6004. In support hereof, the Trustee respectfully states as follows:

**Synopsis**[1]

1. The Trustee moves for authority to sell the Debtor's interest in 7401 E. Ben White Blvd., Austin, Texas 78741, 8201 E. Riverside Dr., Austin, Texas 78744, and 7620 Metro Center

---

[1] Unless otherwise indicated, (a) all statutory references are to the United States Bankruptcy Code, Title 11 United States Code, and (b) all rule references are to the Federal Rules of Bankruptcy Procedure.

Dr., Austin, Texas 78744 (as more specifically described in the Asset Purchase Agreement attached hereto as **Exhibit "A"** and incorporated herein by reference, and which are collectively referred to herein as the "**Real Estate**") to Met Center Austin LLC (the "**Purchaser**") for cash in the amount of Forty-Seven Million Five Hundred Seventy-Five Thousand Dollars ($47,575,000.00) (the "**Purchase Price**"), subject to higher and better bids, and with such sale free and clear of all liens, claims, and encumbrances and providing relief pursuant to 11 U.S.C. § 363(b), (f), and (m) and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). Additionally, the Trustee moves for authority to assume and assign certain of the Debtor's executory contracts, with any existing monetary defaults cured upon closing of the sale. The Trustee asserts that the Purchase Price is sufficient to pay in full the Debtor's pre-petition secured creditor, its Chapter 11 administrative expenses, its priority (tax) creditors, its unsecured creditors, the United States Trustee fees and the Trustee's compensation and attorney's fees and expenses.[2]

2. This proposal must be heard, considered, and approved by the Court, if at all, prior to the existing April 15, 2022 deed-in-lieu transfer deadline set forth in this Court's *Agreed Order Granting SKW – B Acquisitions Seller C, LLC Relief from the Automatic Stay and Granting Related Relief* dated December 22, 2021 (Docket #47, pg. 2, para. 3). The Trustee has, accordingly, requested emergency consideration of this Motion.

### Jurisdiction and Venue

3. This Court has jurisdiction over this matter proceeding pursuant to 28 U.S.C. § 157(a), 28 U.S.C. § 1334(b), and the standing Western District of Texas Order of Reference of

---

[2] A "uses" analysis of the claims and expenses to be paid by the Purchase Price is attached as **Exhibit "B"** and incorporated herein by reference.

Bankruptcy Cases and Proceedings. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  This Court has constitutional authority to enter this Sale Order and to grant the relief herein.  The legal predicates for the relief requested in this Motion include section 363 of Title 11 of the United States Code, §§ 101 *et seq.* (as amended, the "**Bankruptcy Code**"), and Bankruptcy Rules 2002 and 6004.

## Background

5.  On September 7, 2021 (the "**Petition Date**"), the Debtor commenced this case by filing a petition for relief under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Case**").

6.  By Order dated March 29, 2022 [Docket No. 74], the Court directed the United States Trustee ("**UST**") to select and appoint a chapter 11 trustee to oversee the administration of the Debtor's Estate and to operate and manage the Debtor's business and properties.

7.  The UST subsequently selected and appointed Randolph N. Osherow as chapter 11 trustee herein, which selection was thereafter ratified and approved by the Court by Order dated March 31, 2022 [Docket No. 78].

8.  To date, no creditors' committee has been appointed in the Bankruptcy Case.

9.  The Debtor owns the Real Estate, comprised of certain real properties located at 7401 East Ben White Boulevard, Austin, Texas 78741, 8201 East Riverside Drive, Austin, Texas 78744, and 7620 Metro Center, Austin, Texas 78744.  *See* Bankruptcy Schedule A/B [Docket No. 16], at No. 55.  Based on the Trustee's investigation, ownership of the Real Estate is the Debtor's sole business.  *See* Voluntary Petition [Docket No. 1], at No. 7.

10.  Prior to the Petition Date, the Debtor, as borrower, obtained a mortgage loan (the "**Loan**") from LoanCore Capital Credit REIT LLC ("**Original Lender**") pursuant to a loan

agreement, dated as of April 19, 2018 (as amended from time to time, the "**Prepetition Loan Agreement**").  *See* Dismissal Motion (as defined below), at ¶ 8.

11.     The Loan is evidenced by a Promissory Note dated April 19, 2018 made by the Debtor in favor of Original Lender in the principal amount of $48,200,000.  Dismissal Motion, at ¶ 9.

12.     The Loan is secured by, among other things, a certain Deed of Trust, Assignment of Leases and Rents and Security Agreement, dated as of April 19, 2018 (the "**Original Deed of Trust**," and together with the Existing Promissory Note and Prepetition Loan Agreement, the "**Prepetition Loan Documents**").  To perfect the liens granted to the Original Lender, the Original Deed of Trust was recorded with the County Clerk of Travis County, Texas, and constitutes a valid, first mortgage lien and encumbrance on the Real Estate.  Dismissal Motion, at ¶ 10.

13.     Pursuant to certain assignment agreements, SKW-B Acquisitions Seller C, LLC (the "**Noteholder**"), succeeded to the Original Lender as lender under the Prepetition Loan Documents.  Dismissal Motion, at ¶ 14.

14.     The maturity date under the Prepetition Loan Documents was May 7, 2021 ("**Original Maturity Date**").  According to the Debtor: (i) the Debtor failed to satisfy the debt evidenced by the Prepetition Loan Documents and, accordingly, an event of default occurred under the Prepetition Loan Documents; and (ii) this Bankruptcy Case was filed to forestall the Noteholder's attempted non-judicial foreclosure sale and to afford the Debtor the opportunity to restructure its financial affairs under the auspices of chapter 11.

15.     Pursuant to a motion filed November 11, 2021 [Docket No. 41] (the "**Dismissal Motion**"), the Noteholder sought the entry of an order, pursuant to section 1112(b) of the Bankruptcy Code, dismissing the Bankruptcy Case, asserting that the case was filed in bad faith,

the Debtor was eschewing its responsibilities as a debtor in possession, and the Debtor had no real prospect for a reorganization.

16.     Pursuant to a certain *Agreed Order Granting SKW – B Acquisitions Seller C, LLC Relief From the Automatic Stay and Granting Related Relief*, entered December 22, 2021 [Docket No. 47] (the "**Agreed Order**"), the Debtor and the Noteholder resolved the Dismissal Motion and in doing so agreed, among other things: (a) that the Debtor would deliver to the Noteholder a Deed in Lieu of Foreclosure (the "**DIL**") to be held in escrow; (b) that the Debtor would be afforded until 11:59 (prevailing Eastern time) on April 15, 2022 (the "**Payoff Deadline**") to effectuate a payoff and satisfaction of the amounts due the Noteholder under the Existing Promissory Note and Prepetition Loan Documents (such amounts to be calculated as set forth in the Agreed Order); (c) to allowance of the Noteholder's secured claim in the amount of $44,548,842.60 (plus default interest in the per diem amount of $12,470.00, and any other allowable fees and costs accruing from and after December 1, 2021) (the "**Payoff Amount**"); and (d) that, in the event the Debtor fails to make timely payment to the Noteholder by no later than the Payoff Deadline, the automatic stay would be automatically lifted in order to, in the alternative: (i) afford the Noteholder the requisite authorization to release the DIL from escrow and record same (or a "**Replacement DIL**," as defined in the Agreed Order); or (ii) pursue a foreclosure of the Real Estate in accordance with applicable non-bankruptcy law.

17.     Prior to April 11, 2022, the Trustee had no bona fide sale opportunities or financing options available to him to meet the monetary requirements in the Agreed Order to remit the Payoff Amount to the Noteholder by the Payoff Deadline.  On the morning of April 11, 2022, counsel for the Trustee received communications from counsel for Purchaser inquiring about the sale of the Real Estate to Purchaser in amount sufficient to fully pay the Payoff Amount as well as pay all

prepetition and postpetition obligations of the Debtor. Purchaser, as evidenced by this Motion, offers to purchase the Real Estate for $47,575,000.00 with a closing and funding to the Noteholder of the required Payoff Amount prior to the Payoff Deadline.

18. Purchaser requires for this transaction that the sale be free and clear of all liens, claims and encumbrances to the fullest extent allowed by the Bankruptcy Code. The Purchase Price will pay in full all outstanding encumbrances on the Real Estate, including any outstanding encumbrances on the attached Travis County Real Estate Index Property Search (attached as **Exhibit "C"**) and the attached Texas Secretary of State UCC-1 Debtor Name Search (attached as **Exhibit "D"**). Purchaser is also requesting the assumption and assignment of certain of the Debtor's executory contracts, including unexpired leases relating to the Real Estate, with any existing monetary defaults to be cured upon closing of the sale.[3] The executory contracts to be assigned to Purchaser are listed on **Exhibit "D"**.[4] Purchaser is not requesting unusual protections and is not requiring additional contingencies to close the sale of the Real Estate. As a result, the Trustee, who otherwise faces a likely conversion of this bankruptcy case to chapter 7 if the sole significant operating asset of the Estate is surrendered, is now in possession of an offer to fully pay all pre-petition and post-petition obligations of the Debtor and the Estate. Consequently, the Trustee believes the unusual circumstances of this case and the development of this sale offer warrant the Court's emergency consideration of this Motion.

### The Proposed Sale Transaction

19. The Trustee moves for authority to sell the Debtor's interest in the Real Estate for

---

[3] To the extent any asserted claim for cure is allowed by this Court and corresponds to a filed or scheduled claim against the Debtor's Estate, any such claim is payable from the proceeds of sale. Otherwise such claim shall be the Purchaser's separate responsibility.

[4] Purchaser is not assuming the Property Management Agreement with WCRE Management, LLC.

the Purchase Price, with such sale free and clear of all liens, claims and encumbrances and providing relief pursuant to 11 U.S.C. § 363(b), (f), and (m) and Bankruptcy Rules 2002 and 6004. The Trustee also moves for authority to assume and assign certain executory contracts pursuant to 11 U.S.C. § 365. Especially given that the Trustee proposes to sell by this Motion the sole, substantial operating asset of the Estate, the Trustee asserts that the assumption and assignment of the relevant contracts and leases designated by the Purchase is a sound and reasonable exercise of the Trustee's business judgment and complies with Bankruptcy Code section 365.

20.     The Trustee asserts that the Purchase Price is sufficient to pay in full the secured Noteholder, its priority creditors (comprised of tax claims), its unsecured creditors, and all projected Chapter 11 administrative expenses including the United States Trustee fees, the Trustee's (agreed) commission, attorney's fees and expenses. The Trustee believes that the consideration provided by Purchaser is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivisions.

21.     In addition, the Trustee has also, subsequently, received at least one other expression of interest to acquire the Real Estate through an Estate sale, which, as of the time of filing of this Motion, appears that it may be viable. Accordingly, this Motion is expressly subject to higher and better offers. To the extent that a higher and better offer is approved by the Court other than an offer from the Purchaser, the Purchaser reserves the right to see reimbursement of actual attorney's fees and expenses incurred by the Purchaser in pursuing the purchase of the Real Estate through this motion practice.

22.     Notwithstanding, given the seven months that this case has been on file and the impending Payoff Deadline, the Trustee believes the proposed sale is the only avenue to fully pay

off the Debtor's obligations, which necessarily maximizes the value of the Real Estate for the bankruptcy Estate. The Trustee asserts that the very short negotiations were conducted in a diligent, non-collusive, fair, and good-faith manner. Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Neither the Trustee nor Purchaser have engaged in any conduct that would cause or permit the proposed sale to be avoided under section 363(n) of the Bankruptcy Code. Neither Purchaser nor any of its affiliates or representatives is an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Purchaser, to the extent it timely and fully closes and performs, shall be a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, shall be entitled to all of the protections afforded thereby.

23. Upon the closing and funding, the Trustee requests that the Real Estate be approved for transfer to Purchaser free and clear of any and all liens, claims, interests, and encumbrances pursuant to 11 U.S.C. § 363(f), except liens of governmental units for ad valorem tax claims securing taxes (which claims will also be paid through the sale). Further, given that Purchaser is acquiring the assets free and clear of all claims liens and encumbrances pursuant to Bankruptcy Code § 363(f), the Trustee requests a finding that Purchaser is not and cannot be a successor in interest to the Debtor as to any creditor or other parties-in-interest as to such claims, liens and encumbrances. The Trustee requests that the sale order be binding upon all creditors of, and equity holders in, the Debtors and any and all other parties in interest.

24. As further set forth herein, the Trustee may sell the Real Estate free and clear of any and all liens, claims, encumbrances, and interests, including claims of governmental units for ad valorem tax claims (which claims shall be paid at closing), pursuant to 11 U.S.C. § 363(f), because, in each case, one or more of the standards set forth in section 363(f)(1)–(5) of the

Bankruptcy Code has been satisfied. Immediately upon closing and funding, any and all liens, claims, encumbrances, and interests against the Real Estate, including the Original Lender and Noteholder, shall attach to the proceeds of the sale of the Real Estate (to the extent not paid at closing) to the same extent and in the same priority as existent against the Real Estate.

25.     The Trustee requests that the proposed sale be approved for the purchase and sale of the Real Estate. Pursuant to section 363 of the Bankruptcy Code, the Trustee requests authority and direction to take any and all actions necessary to consummate the sale of the Real Estate pursuant to and in accordance with the terms and conditions in this Motion. At the closing, the Trustee seeks authorization to pay or to cause to be paid the required Payoff Amount owed to the Noteholder and all taxes and interest due to governmental units for ad valorem taxes and interest, at and through the closing of the sale.

26.     The Trustee requests the Court authorize Purchaser to file appropriate documentation evidencing the payment in full of any encumbrance listed on **Exhibit C** and/or **D** once such encumbrance is paid in full from the sale proceeds, including encumbrances evidenced by any financing statements, mortgages, mechanic's liens, *lis pendens*, or any other documents or agreements and that Purchaser be authorized to file, register, or otherwise record a certified copy of the sale order.

27.     The Trustee requests that the sale order, once filed, registered, or otherwise recorded, (a) shall be effective as a conclusive determination that, upon the closing, all liens, claims, encumbrances, and interests of any kind or nature, except liens of governmental units for ad valorem tax claims (which claims shall be paid at closing), whatsoever existing as to the Real Estate (but not the proceeds) prior to the closing have been unconditionally released, discharged, and terminated, and (b) shall be binding upon and shall govern the acts of all persons and entities

including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, local officials, notaries, protonotaries, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to, the Real Estate.

28.     The Trustee requests this Bankruptcy Court retain jurisdiction to, among other things, interpret, enforce, and implement the terms and provisions of its sale order.

### **Waiver of Bankruptcy Rule 6004(h)**

29.     The Trustee requests that, notwithstanding Bankruptcy Rule 6004(h), the sale order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, such that, in the absence of any person or entity obtaining a stay pending appeal, the Trustee is free to close upon the sale to Purchaser prior to the Payoff Deadline.

25.     So as to permit the immediate consummation of the sale of the Real Estate to Purchaser, the Trustee requests that the Court enter an order providing that notice of the relief requested herein satisfies the Bankruptcy Rules and that the Trustee has established cause to waive the 14-day stay under Bankruptcy Rule 6004(h) (to the extent applicable) for the relief requested herein.

### **Expedited Consideration**

26.     As set forth above, in order for this Motion and any underlying effort to preserve the Estate's equity in the Real Estate to remain viable, it must be heard, approved by the Court,

and closed so that the relevant sale proceeds can be funded to the Noteholder prior to the looming Payoff Deadline.

27.     Accordingly, the Trustee has filed and served a separate motion to expedite the Court's consideration of this Motion, contemporaneously herewith.

## Conclusion

WHEREFORE, the Trustee respectfully requests that this Court enter the proposed Final Order, in substantially the form attached hereto as **Exhibit "E"**, and grant the Trustee such other and further relief as the Court deems appropriate.

Dated: April 12, 2022                                    Respectfully submitted,

By: */s/ Jay H. Ong*
    Jay H. Ong
    Texas Bar No. 24028756
    Thanhan Nguyen
    Texas Bar No. 24118479
    MUNSCH HARDT KOPF & HARR, P.C.
    1717 West 6th Street, Suite 250
    Austin, Texas 78703
    Telephone: (512) 391-6100
    Facsimile: (512) 391-6149
    Email:   jong@munsch.com
              anguyen@munsch.com

**Counsel For Randolph N. Osherow**
**As Chapter 11 Trustee for WC Met Center, LLC**

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on the 12th day of April 2022, he personally caused true and correct copies of the foregoing pleading, together with all exhibits thereto, to be served on all parties receiving electronic notice through the Court's CM/ECF system, as well as on the parties listed on the attached service list, via first class U.S. mail.

Theresa A Driscoll on behalf of Creditor SKW - B Acquisitions Seller C, LLC
tdriscoll@moritthock.com

Jay Ong on behalf of Trustee Randolph N. Osherow
jong@munsch.com

Mark H. Ralston on behalf of Debtor WC Met Center, LLC
mralston@fjrpllc.com

John C. Roy on behalf of United States Trustee - AU12
casey.roy@usdoj.gov; ustpregion07.au.ecf@usdoj.gov

Frances A. Smith on behalf of Creditor SKW - B Acquisitions Seller C, LLC
frances.smith@judithwross.com

Jason A. Starks on behalf of Creditor Travis County
bkecf@traviscountytx.gov

James W Volberding on behalf of Interested Party Seth Kretzer
jamesvolberding@gmail.com

Kimberly A. Walsh on behalf of Creditor Texas Comptroller of Public Accounts, Revenue Accounting Division
bk-kwalsh@oag.texas.gov

*/s/ Thanhan Nguyen*
Thanhan Nguyen

Label Matrix for local noticing
0542-1
Case 21-10698-tmd
Western District of Texas
Austin
Tue Apr 12 15:44:37 CDT 2022

WC Met Center, LLC
814 Lavaca St.
Austin, TX 78701-2316

U.S. BANKRUPTCY COURT
903 SAN JACINTO, SUITE 322
AUSTIN, TX 78701-2450

AT&T
PO Box 5019
Carol Stream, IL  60197-5019

AT&T Corp.
%AT&T Services, Inc.
Karen A Cavagnaro - Lead Paralegal
One AT&T Way, Room 3A104
Bedminster, NJ 07921-2693

Advanced Video Surveillance, Inc
AVS Technology
140J Commerce Way
Totowa, NJ 07512-3123

City of Austin
PO Box 2267
Austin, TX  78783-2267

City of Austin dba Austin Energy
721 Barton Springs RD
Austin, TX 78704-1145

Comp- Utility Corporation
7720 Waldon Drive
Austin, TX 78750-8264

Comptroller of Public Accounts
C/O Office of the Attorney General
Bankruptcy - Collections Division MC-008
PO Box 12548
Austin TX  78711-2548

Contractors Asphalt, L.P.
713 Linger Lane #C
Austin, TX 78721-3608

James W. Volberding
110 N. College Avenue, Suite 1850
Tyler, TX 75702-7370

Kimberly A. Walsh
Assistant Attorney General
Bankruptcy & Collections Division MC 008
P.O. Box 12548
Austin, Texas 78711-2548

Mirror Lawn Turf Doctor, Inc.
PO Box 1000, Dept. 213
Memphis, TN  38148-0213

Randolph N. Osherow
c/o Jay H. Ong
Munsch Hardt Kopf & Harr, PC
1717 W. 6th Street, Suite 250
Austin, TX 78703-4777

SKW - B Acquisitions Seller C, LLC
c/o Moritt Hock & Hamroff LLP
400 Garden City Plaza
Garden City, NY 11530-3322

SKW-B Acquisitions Seller C, LLC
Attn: Theresa Driscoll
Moritt Hock & Hamroff, LLP
400 Garden City Plaza
Garden City, NY 11530-3327

SKW-B Acquisitions Seller C, LLC
c/o Frances A. Smith
Ross & Smith, PC
700 N. Pearl Street, Ste. 1610
Dallas, TX 75201-7459

Sante Laboratories LLC
c/o Cain & Skarnulis PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701-4653

Seth Kretzer
9119 South Gessner Street, Suite 105
Houston, TX 77074-2845

TERRACON
PO Box 959673
St. Louis, MO  63195-9673

Texas Gas Service
PO Box 219913
Kansas City, MO  64121-9913

Texas Roofing Co., Inc.
16809 Radholme Court
Round Rock, TX 78664-8643

The Texas Comptroller of Public Accounts
Kimberly A. Walsh Assistant A.G.
Bankruptcy & Collections Division MC 008
P.O. Box 12548
Austin, Texas 78711-2548

Travis County
c/o Jason A. Starks
P.O. Box 1748
Austin, TX 78767-1748

United States Trustee – AU12
United States Trustee
903 San Jacinto Blvd, Suite 230
Austin, TX 78701-2450

WCRE Management, LLC
814 Lavaca Street
Austin, TX 78701-2316

c/o Ross & Smith, PC
Attn: Frances A. Smith
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201
Email: frances.smith@judithwross.co 75201-7459

Mark H. Ralston
Fishman Jackson Ronquillo PLLC
13155 Noel Rd #700
Dallas, TX 75240-5030

## **Exhibit A**

**Asset Purchase Agreement**

# PURCHASE AND SALE AGREEMENT

**by and between**

**Randolph N. Osherow, Chapter 11 Trustee in the WC Met Center, LLC Chapter 11 bankruptcy case, in his capacity as Seller**

**and**

**Met Center Austin LLC as Buyer**

# Purchase and Sale Agreement

This Purchase and Sale Agreement (this "Agreement") is dated and effective on April [], 2022 by and between Randolph N. Osherow, the duly appointed and acting Chapter 11 trustee in the WC Met Center LLC Chapter 11 bankruptcy case ("Seller"), and Met Center Austin LLC a Delaware limited liability company ("Buyer").

## Preliminary Statements

A.      The Seller is the duly appointed and acting Chapter 11 trustee in the WC Met Center LLC Chapter 11 bankruptcy case, Case No. 21-10698-tmd, filed in the Western District of Texas, Austin Division ("Bankruptcy Case").

B.      WC Met Center commenced its Chapter 11 bankruptcy case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on September 7, 2021 by filing a voluntary petition with the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court");

C.      Seller was authorized to sell the assets set forth on **Exhibit A** of this Agreement ("Sale Assets") and to assume and assign the executory contracts on **Exhibit B** ("Executory Contracts") pursuant to approval and authorization granted to Seller by the Bankruptcy Code and by order of the Bankruptcy Court;

D.      Seller wishes to sell to Buyer and Buyer wishes to purchase from Seller the Sale Assets (comprised of all Debtor's real estate interests as listed in **Exhibit A**), as well as assume and assign the Executory Contracts to Buyer pursuant to, Sections 363 and 365 of the Bankruptcy Code and the applicable Federal Rules of Bankruptcy Procedure, for the consideration of Forty-Seven Million Five Hundred Seventy-Five Thousand Dollars ($47,575,000.00) ("Purchase Price").

E.      The transaction contemplated by this Agreement is subject to the prior approval of the Bankruptcy Court and will be consummated only pursuant to such order(s) to be entered in the Bankruptcy Case ("Sale Order") and the applicable provisions of the Bankruptcy Code.

## Agreement

In consideration of the mutual representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions hereof, the parties, intending to be legally bound, hereby agree as follows:

ARTICLE I
AGREEMENT TO PURCHASE AND SELL AND CONSIDERATION

1.1.    Sale and Purchase.  Subject to the Sale Order, at Closing, and upon the terms and conditions set forth herein, Seller agrees to sell, convey, assign, transfer, and deliver to Buyer, and Buyer agrees to purchase, acquire, and accept, without any warranty whatsoever, all right, title and interest of Seller in and to and in each case free and clear of all Liens, claims, and interests the Sale Assets, but excluding the Excluded Assets, as such Sale Assets are specified below:

(a) All Sale Assets free and clear of all claims, liens, encumbrances and interests, as specified in attached **Exhibit A**.  Seller and Buyer may supplement **Exhibit A** with additional assets agreed upon in writing prior to Closing; and

(b) All Executory Contracts specified on **Exhibit B**.

1.2.    Purchase Price.  In consideration for purchasing the Sale Assets and subject to the terms and conditions of this Agreement, Buyer at the Closing will pay to Seller the full lump sum Purchase Price.

(a) Buyer and Seller shall work in good faith to resolve any claims to cure prior defaults asserted under any Executory Contracts as a condition of assuming and assigning same to the Buyer ("Cure Claim(s)").

(b) To the extent any asserted Cure Claim is allowed by this Court and corresponds to a filed or scheduled claim in the Bankruptcy Case, the Seller shall pay any such amount from the proceeds of sale, and such allowed Cure Claims shall otherwise be the separate, responsibility and obligation of the Buyer.

1.3.    Deposit.  Buyer has not given a deposit.

1.4.    Excluded Liabilities.  Except as otherwise set forth in this Agreement, Buyer shall not assume, and shall be deemed not to have assumed, any liabilities of the Debtor or Bankruptcy Estate, save for liabilities associated with the assumed Executory Contracts on **Exhibit B**.

1.5.    Excluded Assets.  Any and all assets of the bankruptcy estate not included in **Exhibit A** or listed in **Exhibit B** are expressly excluded from the Sale Assets.  For avoidance of doubt, Excluded Assets include all avoidance actions arising under Chapter 5 of the Bankruptcy Code, any and all litigation claims held by the Estate, and all other assets listed in the Debtor's bankruptcy schedules not specifically listed on **Exhibit A**.

ARTICLE II
CLOSING

2.1.    Closing; Transfer of Possession; Certain Deliveries.  Unless this Agreement is terminated and the transaction contemplated herein is abandoned pursuant to Article VIII hereof, the closing of the transaction contemplated herein (the "Closing") will take place on April 14, 2021 or on such other date as the parties hereto shall mutually agree, such date to be as soon as

practicable following entry of the Sale Order.  The Closing shall be held at the offices of First Nationwide Title An Amtrust Financial Company,_ 600 Congress Ave., 14th floor, Austin, Texas 78701, at or after 12:00 p.m. a.m., Austin, Texas time, unless the parties hereto otherwise agree. The actual time and date of the Closing are herein called the "Closing Date."  Notwithstanding the foregoing, Buyer and Seller may elect for the Closing to be consummated through delivery of documents and proceeds to a title company selected by Buyer (the "Title Company").  Buyer and Seller may deliver to the Title Company supplementary closing and disbursement instructions that are consistent with the provisions of this Agreement.

(b) At the Closing, Seller shall deliver to Buyer:

(i)       A duly executed deed in recordable form, and otherwise in form and substance sufficient to convey to Buyer fee simple title to that portion of the Sale Assets constituting real property under the laws of the State of Texas (the "Real Property"), free and clear of all liens and encumbrances;

(ii)      A duly executed Bill of Sale;

(iii)     A copy of the Sale Order;

(iv)     A duly executed reconveyance of the existing deed of trust on the Real Property in recordable form; and

(v)      All other instruments of conveyance and transfer, in form and substance reasonably acceptable to Buyer, as may be reasonably necessary to convey the Sale Assets to Buyer or Buyer's designee.

(c) At the Closing, Buyer shall deliver to Seller:

(i)       The Purchase Price, including the authorization of any release of any portion of the Purchase price to pay any required or agreed third parties, to be paid by certified funds or wire transfer to an account or accounts designated by Seller;

(ii)      A duly executed Bill of Sale;

ARTICLE III
REPRESENTATIONS AND WARRANTIES OF SELLER

Seller hereby represents and warrants as follows:

3.1.     Good Standing and Power.  Subject to entry of the Sale Order, Seller has all requisite power and authority to execute and deliver this Agreement and the other documents and instruments to be executed and delivered by Seller and to perform its obligations hereunder and thereunder.

3.2.     Authority.  The execution, delivery and performance of this Agreement and the consummation by Seller of the transactions contemplated hereby have been duly authorized by the Sale Order.

3.3.    **Execution and Binding Effect.**  This Agreement has been duly and validly executed and delivered by Seller, and, following entry of the Sale Order, this Agreement and the transaction contemplated hereby constitute (assuming in each case the due and valid authorization, execution and delivery thereof by the other parties hereto), a valid and legally binding obligation of Seller enforceable against Seller in accordance with its respective terms.

3.4.    **Limitations on Seller's Representations and Warranties.**  Except for the representations and warranties contained in this Agreement, Seller makes no other express or implied representation or warranty, including, without limitation, representations or warranties as to the condition of the Sale Assets, their contents, the income derived or potentially to be derived from the Sale Assets, or the expenses incurred or potentially to be incurred in connection with the Sale Assets.  Seller is not, and will not be, liable or bound in any manner by express or implied warranties, guarantees, statements, promises, representations or information pertaining to the Sale Assets or the Business, made or furnished by any broker, agent, employee, servant or other person representing or purporting to represent Seller, unless and to the extent the same is expressly set forth in this Agreement.

ARTICLE IV
REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Seller as follows:

4.1.    **Existence, Good Standing and Power.**  Buyer is a limited liability company validly existing and in good standing under the laws of the State of Delaware.  Buyer has all requisite power and authority to conduct its business as presently conducted, to execute and deliver this Agreement and the other documents and instruments to be executed and delivered by Buyer pursuant hereto and to perform its obligations hereunder and thereunder.

4.2.    **Authority.**  The execution, delivery and performance of this Agreement and the consummation by Buyer of the transactions contemplated hereby have been duly authorized by all necessary corporate action on the part of Buyer.

4.3.    **Execution and Binding Effect.**  This Agreement has been duly and validly executed and delivered by Buyer and, following entry of the Sale Order, this Agreement and the transaction contemplated hereby constitutes (assuming, in each case, the due and valid authorization, execution and delivery thereof by the other parties hereto) a valid and legally binding obligation of Buyer, enforceable against it in accordance with its terms.

4.4.    **Third Party Approvals.**  The execution, delivery and performance by Buyer of this Agreement and the transactions contemplated hereby do not require any consents, waivers, authorizations or approvals of, or filings with, any third Persons which have not been obtained by Buyer, other than the approval of the Bankruptcy Court pursuant to the Sale Order.

4.5.    **Financing.**  Buyer acknowledges and agrees that the purchase of the Sale Assets is not subject to any financing contingency whatsoever and that on the Closing Date, Buyer will have sufficient funds on hand or committed lines of credit to consummate the transactions contemplated by this Agreement.

4.6.  <u>Financial Ability.</u>  At all times between the date of this Agreement and the Closing Date, Buyer has, and will have, the financial ability, including sufficient available funds or immediate access to sufficient funds, to consummate the transactions contemplated by this Agreement and, as necessary, establish its ability to provide "adequate assurance," as such term is used in Section 365 of the Bankruptcy Code, and Buyer will provide to Seller such information as Seller reasonably believes necessary to establish such "adequate assurance" and cooperate with Seller as reasonably necessary to obtain entry of the Sale Order.

4.7.  <u>Condition of Property and Waivers.</u>  TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW AND EXCEPT FOR SELLER'S REPRESENTATIONS AND WARRANTIES CONTAINED HEREIN:  THE SALE OF THE SALE ASSETS IS MADE AND ACCEPTED ON AN "AS IS" AND "WHERE IS" BASIS WITH ALL FAULTS OR DEFECTS, WHETHER LATENT OR APPARENT, KNOWN OR UNKNOWN AND WITH NO LEGAL WARRANTIES WHATSOEVER ALL OF WHICH ARE EXPRESSLY WAIVED. BUYER, FOR ITSELF AND ON BEHALF OF ITS ASSIGNS AND TRANSFEREES, ACCEPTS THE SALE ASSETS IN THE CONDITION AS EXISTING AT THE TIME OF SALE. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, CONCERNING TITLE OR OWNERSHIP TO THE SALE ASSETS, THE ABSENCE OF LIENS OR ENCUMBRANCES, THE CONDITION OF THE SALE ASSETS, OR ANY PARTS THEREOF, INCLUDING, WITHOUT IMITATION, THE FITNESS OF THE SALE ASSETS FOR ANY PURPOSE OR INTENDED USE, THE PRESENCE OR ABSENCE OF APPARENT OR HIDDEN DEFECTS, THE PRESENCE OR ABSENCE OF ENVIRONMENTAL CONTAMINATION, OR THE COMPLIANCE OF THE SALE ASSETS WITH ANY APPLICABLE LAWS, RULES OR REGULATIONS, ALL OF WHICH WARRANTIES ARE HEREBY EXPRESSLY WAIVED BY BUYER.  BUYER FULLY AND COMPLETELY WAIVES ANY AND ALL RIGHTS FOR THE RETURN OF ALL OR ANY PART OF THE PURCHASE PRICE BY THE REASON OF ANY SUCH DEFECTS.  BUYER ACKNOWLEDGES AND DECLARES THAT NEITHER SELLER NOR ANY PARTY, WHOMSOEVER, ACTING OR PURPORTING TO ACT IN ANY CAPACITY WHATSOEVER ON BEHALF OF SELLER, HAS MADE ANY DIRECT, INDIRECT, EXPLICIT OR IMPLICIT STATEMENT, REPRESENTATION OR DECLARATION, WHETHER BY WRITTEN OR ORAL STATEMENT OR OTHERWISE, AND UPON WHICH BUYER HAS RELIED, CONCERNING TITLE TO THE SALE ASSETS, THE ABSENCE OF ANY LIENS OR ENCUMBRANCES, THE EXISTENCE OR NON-EXISTENCE OF ANY QUALITY, CHARACTERISTIC OR CONDITION OF THE SALE ASSETS, EXCEPT AS CONTAINED IN THIS AGREEMENT.  BUYER EXPRESSLY WAIVES ALL LEGAL WARRANTIES.

ARTICLE V
COVENANTS OF THE PARTIES

5.1.  <u>Competing Transaction.</u>  From the date hereof (and any prior time) and until the Closing, Seller is permitted to cause its representatives to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, any entity in connection with any sale or other disposition of the Sale Assets.  In addition, Seller may have the responsibility and obligation under the Bankruptcy Code or other applicable law to respond to any inquiries or offers to purchase the Sale Assets and perform any and all other acts related thereto, including, without limitation, supplying information relating to the Business and Sale Assets to prospective buyers.

## ARTICLE VI
## CONDITIONS TO OBLIGATIONS OF THE PARTIES

6.1.    Conditions Precedent to Obligations of Buyer and Seller.  The respective obligations of Buyer, on the one hand, and Seller, on the other hand, to close the transactions contemplated under this Agreement shall be subject to the satisfaction (or waiver by the other party) at or prior to the Closing Date of the following conditions:

(a) Bankruptcy Court Authorization.  The Bankruptcy Court shall have entered the Sale Order.  The Sale Order shall be an unstayed order or orders of the Bankruptcy Court approving this Agreement and all of the terms and conditions hereof, and approving and authorizing Seller to consummate the transactions contemplated hereby and shall be in a form reasonably acceptable to Buyer.

(b) Seller and Buyer shall have complied with Section 2.1(b) and (c).

6.2.    Conditions Precedent to Obligations of Buyer.  The obligation of Buyer to close the transactions contemplated under this Agreement is subject to the reasonable satisfaction (or waiver by Buyer) at or prior to the Closing Date of each of the following additional conditions:

(a)    Bankruptcy Court Authorization.  The Bankruptcy Court shall have entered the Sale Order.  The Sale Order shall be an unstayed order or orders of the Bankruptcy Court approving this Agreement and all of the terms and conditions hereof, and approving and authorizing Seller to consummate the transactions contemplated hereby, and shall be in a form reasonably acceptable to Buyer.

## ARTICLE VII
## TERMINATION

7.1.    Termination of Agreement.  This Agreement may be terminated and the transactions contemplated hereby abandoned at any time prior to the Closing:

(a) By mutual written consent of Buyer and Seller;

(b) By either Buyer or Seller if Seller consummates a Competing Transaction, on the Business Day following the date of consummation of any Competing Transaction (unless Seller or Buyer shall previously have given notice of termination);

(c) By Buyer if a Sale Order in form and substance reasonably acceptable to the Buyer has not been entered by the Bankruptcy Court on or before April 15, 2022; or

(d) By Seller, on the one hand, or Buyer, on the other, if Buyer or Seller, as the case may be, materially breach any of its obligations under this Agreement, unless such breach shall be cured prior to closing;

7.2.    No Liabilities in Event of Termination.  In the event of any termination of the Agreement by mutual written consent, written notice thereof shall forthwith be given to the other party specifying the provision hereof pursuant to which such termination is made, this

Agreement shall forthwith become wholly void and of no further force and effect, and there shall be no liability on the part of Buyer or Seller.

ARTICLE VIII
POSSESSION

8.1.    Possession.  Possession of the Sale Assets will be delivered to Buyer at the Closing.

ARTICLE IX
RISK OF LOSS

9.1.    Risk of Loss.  Until the Closing, risk of loss to the Sale Assets, ordinary wear and tear excepted, shall be upon Seller.  Immediately after the Closing, risk of loss to the Sale Assets shall be solely upon Buyer.

ARTICLE X
MISCELLANEOUS

10.1.    Expenses.  Except as set forth in this Agreement and whether or not the transactions contemplated hereby are consummated, each party shall bear all costs and expenses incurred or to be incurred by such party in connection with this Agreement and the consummation of the transactions contemplated hereby.

10.2.    Parties in Interest.  This Agreement is binding upon and inures solely to the benefit of Seller and Buyer, and nothing in this Agreement, express or implied, is intended to or shall confer upon any other person any rights, benefits or remedies of any nature whatsoever under or by reason of this Agreement.

10.3.    Notices.  Any and all notices or deliveries required to be given to another party to this Agreement shall be in writing and shall be delivered (i) in person, (ii) by a nationally recognized overnight carrier that guarantees next day delivery and provides a receipt, (iii) United States first class certified mail, return receipt requested, or (iv) on the day of transmission if sent via e-mail transmission to the e-mail address given below Notice parties and addressee information is as follows:

If to Seller:

Randolph N. Osherow, Chapter 11 Panel Trustee
342 West Woodlawn, Suite 100
San Antonio, Texas 78212
(210) 738-3001
Email: rosherow@hotmail.com

With a duplicate copy (which shall not constitute notice to Seller) to:

>Jay H. Ong
>MUNSCH HARDT KOPF & HARR, P.C.
>1717 West 6th Street, Suite 250
>Austin, Texas 78703
>Telephone: (512) 391-6100
>Facsimile: (512) 391-6149
>Email: jong@munsch.com

If to Buyer:

>Lynn Hamilton Butler
>Husch Blackwell LLP
>111 Congress Avenue, Suite 1400
>Austin, Texas 78701
>Phone: (512) 479-9758
>Fax: (512) 479-1101
>Email:  lynn.butler@huschblackwell.com

With a duplicate copy (which shall not constitute notice to Buyer) to:

>Robert Nitkin
>Kennedy Lewis Investment Management
>111 West 33rd Street, Suite 1910
>New York, NY 10120
>robert.nitkin@klimllc.com
>Cell: 203-247-7298

>Brad M. Kahn
>AKIN GUMP STRAUSS HAUER & FELD LLP
>One Bryant Park
>New York, NY 10036-6745
>Direct: +1 212.872.8121
>Fax: +1 212.872.1002
>bkahn@akingump.com

10.4.  <u>Choice of Law</u>.  This Agreement shall be construed and interpreted, and the rights of the parties shall be determined, in accordance with the Bankruptcy Code and the substantive laws of the State of Texas, in each case without regard or reference to the conflict of law principles thereof or of any other jurisdiction.

10.5.  <u>Entire Agreement: Amendments and Waivers.</u>  This Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written, of the parties.  No supplement, modification or waiver of this Agreement (including, without limitation, any schedule hereto) shall be binding unless the same is executed in writing by all parties.

10.6.   Counterparts.   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.7.   Invalidity.  If any one or more of the provisions contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, the parties shall use their reasonable efforts, including, but not limited to, the amendment of this Agreement, to ensure that this Agreement shall reflect as closely as practicable the intent of the parties hereto on the date hereof.

10.8.   Headings.   The table of contents and the headings of the Articles and Sections herein are inserted for convenience of reference only and are not intended to be a part of, or to affect the meaning or interpretation of, this Agreement.

10.9.   Exclusive Jurisdiction.   Without limiting any party's right to appeal any order of the Bankruptcy Court, (a) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (b) any and all claims, actions, causes of action, suits and proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated herein.

10.10.   Waiver of Right to Trial by Jury.  Each party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

10.11.   Specific Performance.   Each of the parties hereto acknowledges that the other party hereto may be irreparably damaged in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or are otherwise breached.  Accordingly, each of the parties hereto shall be entitled to seek an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce specifically this Agreement and the terms and provisions thereof in any action instituted in the Bankruptcy Court.

10.12.   Opportunity to Consult Counsel, Voluntary Act.   Each party to this Agreement acknowledges that it has read this Agreement in its entirety, and has consulted such legal or other advisors as it deems appropriate and understands and agrees to each of the provisions of this Agreement and further acknowledge that it has voluntarily entered into this Agreement.

10.13.   Attorneys' Fees.  If any action or proceeding is necessary to enforce any of the terms, provisions or conditions of this Agreement, including any claim or demand, or to interpret this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees, costs and necessary disbursements in addition to any other relief to which it may otherwise be entitled, whether or not such action or proceeding is prosecuted to judgment.

10.14.   Exhibits and Schedules.  The Exhibits and Schedules attached to, delivered with and identified to this Agreement are a part of this Agreement the same as if fully set forth

herein and all references herein to any Section of this Agreement shall be deemed to incorporate such referenced Exhibits and Schedules.

[End of Text; Two Signature Pages Follow]

**SIGNED** by SELLER, in its capacity as _____ at _____, on the _____ day of _____, 2022, in the physical presence of me, Notary Public, and the following competent witnesses.

**Witnesses:**                                           SELLER
                                                         (in its capacity as _____)


_____     By: _____
                                                               _____
_____     Its: _____
Typed/Printed Name of Witness


_____

_____
Typed/Printed Name of Witness


_____
            Print Name _____
            Notary Public for _____
            Notary or Bar Id. No. _____
            Commission Expires _____

**SIGNED** by _____ at _____, on the
_____ day of _____, 2022, in the physical presence of
me, Notary Public, and the following competent witnesses.


**Witnesses:**                                        _____

_____        By: _____
                                             _____
_____        Its: _____
Typed/Printed Name of Witness


_____

_____
Typed/Printed Name of Witness


_____
        Print Name _____
        Notary Public for _____
        Notary or Bar Id. No. _____
            Commission Expires _____

Exhibit A
Debtor's Asset Schedule

This is a Pro-Forma Policy furnished to or on behalf of the party proposed to be insured for discussion only. It does not reflect the present status of title and is not a commitment to insure the estate or interest as shown herein, nor does it evidence the willingness of the Company to provide any coverage shown herein. Any such commitment must be an express written undertaking issued on the appropriate forms of the Company.

**LOAN POLICY OF TITLE INSURANCE (Form T-2)**
**SCHEDULE A**

**EXHIBIT A**
**LEGAL DESCRIPTION**

Tract I:

Lot 2-D, Block "A", RESUBDIVISION OF LOT 2, BLOCK A, METRO CENTER SECTION 3, a subdivision in the City of Austin, Travis County, Texas, according to the map or plat thereof recorded under Document No. 199900140 of the Official Public Records of Travis County, Texas.

TRACT I-A:

Easements appurtenant to TRACT I as created and defined under terms, conditions and stipulations contained in that certain Declaration of Easements and Restrictions recorded under Document No(s). 1999022835 and 1999026776, of the Official Public Records of Travis County, Texas.

TRACT I-B:

Easements appurtenant to TRACT I as created and defined under terms, conditions and stipulations contained in that certain Joint Use Access Easement recorded under Document No. 1999027819, of the Official Public Records of Travis County, Texas.

TRACT I-C:

Easements appurtenant to TRACT I as created and defined under terms, conditions and stipulations contained in that certain Drainage and Water Quality Pond Easement and Stormwater Easement recorded under Document No. 1999027820, of the Official Public Records of Travis County, Texas.

Tract II:

Lot I, Block "A", METRO CENTER SECTION 4, a subdivision in Travis County, Texas, according to the map or plat thereof recorded in Volume 102, Page 103 of the Plat Records of Travis County, Texas.

Tract III:

Lot I, Block "D", METRO CENTER SECTION 2, a subdivision in Travis County, Texas. according to the map or plat thereof recorded in Volume 100, Page 87 of the Plat Records of Travis County, Texas.

Tract IV:

Easements appurtenant to TRACTS I, II & III as created and defined under terms, conditions and stipulations contained in that certain Amended and Restated Declaration of Covenants, Conditions and Restriction for Met Center Subdivision recorded under Document No. 2006185127, as affected by instrument recorded under Document No. 2008125617, and as affected by Document No. 2008073848, and Document No. 2015180361, of the Official Public Records of Travis County, Texas.

This is a Pro-Forma Policy furnished to or on behalf of the party proposed to be insured for discussion only. It does not reflect the present status of title and is not a commitment to insure the estate or interest as shown herein, nor does it evidence the willingness of the Company to provide any coverage shown herein. Any such commitment must be an express written undertaking issued on the appropriate forms of the Company.

**LOAN POLICY OF TITLE INSURANCE (Form T-2)**
**SCHEDULE A**

FOR INFORMATIONAL PURPOSES ONLY:

7620 Metro Center Dr., Austin, TX 78744  -  03121803120000 (Tract I)

7401 E. Ben White Blvd., Austin, TX 78741  -  03121803080000 (Tract II)

8201 E. Riverside Dr., Austin, TX 78744  -  03142001510000 (Tract III)


NOTE: The Company is prohibited from insuring the area or quantity of the land described herein. Therefore, any statement in the above legal description of the area or quantity of land is not a representation that such area or quantity is correct, but is made only for informational and/or identification purposes and does not override Item 2 of Schedule B hereof.

Exhibit B
Debtor's Executory Contracts

**Fill in this information to identify the case:**

Debtor name    WC Met Center, LLC

United States Bankruptcy Court for the:    Western District of Texas

Case number (If known):    21-10698    Chapter    11

☐ Check if this is an amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases     12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| **2.1** | **State what the contract or lease is for and the nature of the debtor's interest** Real Estate Lease Lessor | Invesco Group Service, Inc. 1555 Peachtree Street, NE Suite 1800 Atlanta, GA, 30309 |
| | **State the term remaining** 103 Months | |
| | **List the contract number of any government contract** | |
| **2.2** | **State what the contract or lease is for and the nature of the debtor's interest** Real Estate Lease Lessor | Overton Enterprises, LLC 8201 East Riverside Drive Suite 125 Austin, TX, 78744 |
| | **State the term remaining** 14 months | |
| | **List the contract number of any government contract** | |
| **2.3** | **State what the contract or lease is for and the nature of the debtor's interest** Real Estate Lease Lessor | Pentagon Technologies Group, Inc. 21031 Alexander Ct Hayward, CA, 94545 |
| | **State the term remaining** 39 months | |
| | **List the contract number of any government contract** | |
| **2.4** | **State what the contract or lease is for and the nature of the debtor's interest** Real Estate Lease Lessor | Sante Laboratories, LLC 17914 Arbor Haven Drive Tampa, FL, 33647 |
| | **State the term remaining** 36 Months | |
| | **List the contract number of any government contract** | |
| **2.5** | **State what the contract or lease is for and the nature of the debtor's interest** Real Estate Lease Lessor | CenturyLink Communications, LLC 5325 Zuni Street Suite 100 Denver, CO, 80221 |
| | **State the term remaining** 42 months | |
| | **List the contract number of any government contract** | |

| Debtor | WC Met Center, LLC | | Case number (if known) | 21-10698 |
|---|---|---|---|---|
| | Name | | | |

 **Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.6 | **State what the contract or lease is for and the nature of the debtor's interest** | Real Estate Lease<br>Lessor | General Motors, LLC<br>12802 Tampa Oaks Blvd., Suite 330<br>Tampa, FL, 33637 |
| | **State the term remaining** | 3 months | |
| | **List the contract number o any government contract** | | |
| 2.7 | **State what the contract or lease is for and the nature of the debtor's interest** | Property Management Agreement<br>Agent | WCRE Management, LLC<br>814 Lavaca St<br>Austin, TX, 78701 |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |
| 2.8 | **State what the contract or lease is for and the nature of the debtor's interest** | Real Estate Lease<br>Lessor | The Electric Reliability Council of Texas, Inc.<br>7620 Metro Center Drive<br>Austin, TX, 78744 |
| | **State the term remaining** | 6 months | |
| | **List the contract number of any government contract** | | |
| 2.9 | **State what the contract or lease is for and the nature of the debtor's interest** | Real Estate Lease<br>Lessor | Data Foundry, Inc.<br>2500 Bee Cave Rd. Bldg. 1 Suite 400<br>Austin, TX, 78746 |
| | **State the term remaining** | 8 months | |
| | **List the contract number of any government contract** | | |
| 2.___ | **State what the contract or lease is for and the nature of the debtor's interest** | | |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |
| 2.___ | **State what the contract or lease is for and the nature of the debtor's interest** | | |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |
| 2.___ | **State what the contract or lease is for and the nature of the debtor's interest** | | |
| | **State the term remaining** | | |
| | **List the contract number of any government contract** | | |

**<u>Exhibit B</u>**

**[Uses Analysis]**

**Existing Obligations of WC Met Center**

- **Secured Creditors: $43,660,350.74**
  - SKW - B Acquisitions Seller C, LLC: $43,660,350.74
  - As of April 15, 2022, but fees only to 3/31/22

- **Tax Creditors: $1,954,033.97**
  - Travis County: $1,583,013.85
  - Texas Comptroller of Public Accounts: $371,020.12

- **Unsecured Creditors (proof of claim)[1]: $283,571.51**
  - Terracon Consultants, Inc.: $24,250.00
  - Sante Laboratories LLC: $21,616.18
  - City of Austin dba Austin Energy: $236,386.26
  - AT&T Services, Inc.: $1,319.07

- **Unsecured Creditors (scheduled amount): $369,740.86**
  - Sante Laboratories LLC: $64,596.51
  - Advanced Video Surveillance, Inc.: $595.38
  - COMP Utility Corporation: $19,066.07
  - Contractors Asphalt, LP: $1,515.50
  - Data Foundry, Inc.: $70,200.00
  - Impact Fire Services, LLC: $135.21
  - Met Center Property Owners Association, Inc.: $45,624.00
  - Mirror Lawn Turf Doctor, Inc.: $92.03
  - Overton Enterprises, LLC: $4,305.08
  - Pentagon Technologies Group, Inc.: $94,150.00
  - Texas Roofing Co., Inc.: $611.08
  - The Electric Reliability Council of Texas, Inc.: $68,850.00

TOTAL PRE-PETITION:      $46,267,697.08

+    $20,000.00 (Lender fees reserve post 3/31/22)
+    $75,000.00 (Fishman Ch. 11 expense estimate)
+    $20,000.00 (Columbia Consulting Group Ch. 11 expense)
+  $500,000.00 Tee (calculated on all closing and estate disbursements, limited per agreement)
+  $400,000.00 Professional Reserve
+    250,000.00 UST

TOTAL REQUIRED USES:          $47,532,697.08

---

[1]     As to the unsecured claims, where a claim is scheduled and no proof of claim filed, the scheduled amount is used.  Where a claim is scheduled and a proof of claim is filed, the proof of claim amount is used.

**Exhibit C**

**[County Search]**

Permanent Index From 10' 01/1968 to 04/01/2022  Temporary Index from 04/02/2022 to 04/12/2022  Images from 01/01/1966

# Rebecca Guerrero, County Clerk
## Travis County
## Real Estate Index Search

Report # 19987635  Requested By WEBPUBLIC (WEBPUBLIC) Party Name Begins With WC MET CENTER, [V,N]_ Sorted By: PAGE DESC

Date: 04/12/2022 05:48 AM

Page 1 of 1

| Instrument # | Book | Page | Date Recorded | Document Type | Grantor | More Names | Grantee | More Names | Legal Description | Status Image |
|---|---|---|---|---|---|---|---|---|---|---|
| 202140234 | | | 08/16/2021 | FORECLOSURE | WC MET CENTER LLC | ✓ | STARLING BRANDON | ✓ | LT 2-D BLK A SEC 3 RESUB OF LT 2 BLK A METRO CENTER AND EASEMENTS | ✓ |
| 2021127578 | | | 06/08/2021 | UR3 | WC MET CENTER LLC | | SKW-B ACQUISITIONS SELLER C LLC | | NO DESCRIPTION | ✓ |
| 2021127577 | | | 06/08/2021 | UR3 | WC MET CENTER LLC | ✓ | LOANCORE CAPITAL CREDIT REIT LLC | | NO DESCRIPTION | ✓ |
| 2020080948 | | | 05/19/2020 | LIEN | P WC MET CENTER LLC | | P MET CENTER PROPERTY OWNERS ASSOCIATION INC | | SEE INSTRUMENT | ✓ |
| 2018104335 | | | 07/03/2018 | UN3 | WC MET CENTER LLC | ✓ | C LCC WAREHOUSE II LLC | | SEE INSTRUMENT | ✓ |
| 2018060624 | | | 04/23/2018 | FSNS | C WC MET CENTER LLC | | C LOANCORE CAPITAL CREDIT REIT LLC | | SEE INSTRUMENT | M |
| 2018059956 | | | 04/20/2018 | TRF | C WC MET CENTER LLC | | C LOANCORE CAPITAL CREDIT REIT LLC | | SEE INSTRUMENT | ✓ |
| 2018059955 | | | 04/20/2018 | DT | C WC MET CENTER LLC | | C LOANCORE CAPITAL CREDIT REIT LLC | | LT 2-D BLK A RESUB LT 2 BLK A METRO CENTER SEC 3 AND EASEMENTS .... | ✓ |
| 2018059954 | | | 04/20/2018 | WD | C WC MET CENTER LLC | | C DIGITAL METCENTER 7-9 LLC | | LT 1 BLK A METRO CENTER SEC 4 | ✓ |
| 2018059953 | | | 04/20/2018 | WD | C WC MET CENTER LLC | | C DIGITAL METCENTER 4-6 LLC | | LT 1 BLK D METRO CENTER SEC 2 | ✓ |
| 2018059952 | | | 04/20/2018 | WD | C WC MET CENTER LLC | ✓ | C DIGITAL REALTY TRUST LP | | LT 2-D BLK A RESUB LT 2 BLK A METRO CENTER SEC 3 | ✓ |

**<u>Exhibit D</u>**

**[SOS Search]**

# TEXAS SECRETARY of STATE
# JOHN B. SCOTT

**Debtor Name Search**

This debtor name search was performed on 04/12/2022 06:51 AM with the following search parameters:
**DEBTOR NAME:**  WC MET CENTER
**CITY:**  [Not Specified]

---

**No records exist which match the criteria you have entered.**

---

[ Order Certificate ]  [ New Search ]

---

Instructions:
- Press 'New Search' if you wish to perform another web inquiry.
- Press 'Previous' or 'Next' to scroll through the results of this inquiry.
- Enter the page number and click 'GO' button to view the desired page.
- Press 'Order Search Certificate' if you wish to order a search certificate with the parameters entered for this web inquiry.
- If you wish to order only selected filings for this debtor, check by the filings and press 'Order Selected Filings'.
- Checked filings will be retained from page to page as you scroll through the results of this inquiry.
- If an order for a search certificate or selected filings is placed against this web inquiry, the web inquiry fee will be waived.
- Check 'Select All Filings' and press 'Order Selected Filings' if you wish to order copies of all filings and full filing history for the results of this web inquiry.
- To view a particular filing document, click on the image under 'View' for the desired document.

**<u>Exhibit E</u>**

**[Form of Final Order]**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 21-10698-tmd-11** |
| **WC MET CENTER, LLC,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

**ORDER GRANTING TRUSTEE'S MOTION FOR EMERGENCY HEARING ON**
**TRUSTEE'S EMERGENCY MOTION FOR AUTHORITY TO SELL IMPROVED**
**REAL PROPERTY AND IMPROVEMENTS FREE AND CLEAR OF ALL LIENS,**
**CLAIMS, AND ENCUMBRANCES AND PROVIDING RELIEF PURSUANT TO**
**11 U.S.C. §§ 363(b), (f), AND (m) AND BANKRUPTCY RULES 2002 AND 6004**

On this date, the Court considered the request for an emergency hearing (the "Motion to Expedite") on the *Emergency Motion for Authority to Sell Improved Real Property and Improvements Free and Clear of All Liens, Claims, and Encumbrances and Providing Relief Pursuant to 11 U.S.C. §§ 363(b), (f), and (m) and Bankruptcy Rules 2002 and 6004* (the "Sale Motion"). The Court finds that the Motion to Expedite complies with Title 11 of the United States Code, §§ 101 *et seq.*, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the Western District of Texas, that notice thereof is adequate under the particular circumstances, and that the Motion to Expedite demonstrates that sufficient cause exists for

shortening the normal response time and scheduling an emergency hearing to consider the Sale Motion.  It is therefore:

1.      **ORDERED** that the Motion to Expedite is GRANTED; it is further

2.      **ORDERED** that an emergency hearing on the **Sale Motion** shall be held before the Court on the date and time set forth above, on the face of this Order.  It is further,

3.      **ORDERED** that the movant, through its counsel of record, shall be responsible to provide notice of this emergency hearing.

# # #

Order submitted by:

Jay H. Ong
Texas Bar No. 24028756
Thanhan Nguyen
Texas Bar No. 24118479
MUNSCH HARDT KOPF & HARR, P.C.
1717 West 6th Street, Suite 250
Austin, Texas 78703
Telephone: (512) 391-6100
Facsimile: (512) 391-6149