**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 15, 2022.**



_____
**TONY M. DAVIS
UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 21-10698-tmd |
| WC MET CENTER, LLC | § | |
|     Debtor. | § | CHAPTER 7 |

### ORDER ALLOWING TRUSTEE'S FIRST APPLICATION FOR COMPENSATION

On April 28, 2022, the Trustee filed an application seeking interim compensation of $1,336,762.39 [ECF 120]. The Court heard the matter on June 6, 2022 and then took the matter under advisement.

This case began in chapter 11. The Debtor's primary assets were four properties in Austin, Texas that the Debtor and the Travis County Appraisal District valued at approximately $68 million. The properties were encumbered by a secured claim of approximately $44 million. On December 22, 2022, the Debtor entered into an agreed order with its primary secured creditor wherein the Debtor agreed to provide the creditor with a Deed in Lieu of Foreclosure that would be recorded if the Debtor did not pay off the secured debt on the properties in full by noon on April 15, 2022 [ECF 47].

About three months later, the U. S. Trustee moved to convert the case from chapter 11 to chapter 7, or to dismiss it, because the Debtor had failed to file monthly operating reports and pay quarterly U.S. Trustee fees. Shortly thereafter, the Court entered an order to show cause why a chapter 11 trustee should not be appointed. The U.S. Trustee motion and the show cause hearing were set on March 23, 2022.

Rather than convert or dismiss, the Court ordered that the U.S. Trustee appoint a chapter 11 trustee and reset the U.S. Trustee motion to convert or dismiss to April 20th, after the looming deadline to pay off the secured creditor. The Court then approved the appointment of Randy Osherow as chapter 11 trustee on March 31, 2022 [ECF 78], two weeks before the deadline. Three days before the deadline, the Trustee filed an expedited motion to sell the properties to Met Center Austin, LLC for $47.575 million, subject to higher and better bids [ECF 85]. Thereafter, an affiliate of the Debtor, Rising Tide Investments, LLC, made a higher bid. The Court held an auction the day before the deadline to pay off the secured lender. At the auction, Rising Tide won with a bid of $53.5 million. A week later, the Court granted the U.S. Trustee's motion and converted the case to chapter 7. The Trustee did not retain a real estate broker to assist with the sale.

Shortly after the conversion, the Trustee filed an application seeking compensation of over $1.3 million based on the formula for trustee compensation articulated under 11 U.S.C. § 326(a). The Debtor argues that compensation of over $1.3 million is unreasonable under the facts of this case.

Because this case was in chapter 11 when the property was sold, the Trustee conceded that the Court must also consider the factors in Section 330(a)(3) to determine whether the requested fee is reasonable.[1] Under Section 330(a)(3):

> In determining the amount of reasonable compensation to be awarded to . . . a trustee under chapter 11 . . . the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A) the time spent on such services;
> (B) the rates charged for such services;
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Section 330(a)(7) states that "[i]n determining the amount of reasonable compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on Section 326." Section 326(a) then limits compensation to a chapter 7 or chapter 11 trustee to reasonable compensation under Section 330, not to exceed certain percentages based on monies disbursed or turned over in the case. So the compensation awarded is capped at the 1.3-million-dollar amount calculated using the formula in section 326(a).[2]

In the Fifth Circuit, courts apply the "lodestar" method of calculating reasonable attorney's fees.[3] To calculate the lodestar amount, courts take the number of hours an attorney

---

[1] TR Brief in Support, ECF 167, pg. 1.
[2] *In re Virgin Offshore U.S.A., Inc.*, 2015 WL 350898 at *3 (Bankr. E.D. La Jan. 26, 2015) ("Harmonizing section 330(a)(7) with section 330(a)(3) is not difficult. Section 330(a)(7) merely incorporates the limitations of 326 on any determination made under section 330(a)(3). In this way a reasonable fee may be determined through a lodestar analysis, but may not exceed the calculation set forth in section 326.").
[3] *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 654-55 (5th Cir. 2012).

3

would reasonably spend for the same type of work and multiply it by the prevailing hourly rate in the community.[4] From there, the Court can adjust the lodestar amount up or down based on the factors contained in Section 330 and the twelve factors listed in *Johnson v. Georgia Highway Express, Inc.*[5]

### A. Lodestar Analysis:

The Trustee testified that he invested 125 hours to secure a $53.5 million sale, and the Court finds that under the time constraint imposed here, this is reasonable. The Trustee also testified that he has billed as much as $1500 an hour. In the absence of evidence from the Debtor regarding the prevailing hourly rate in the community for this type of work, the Court will use $1500 an hour in its analysis. The lodestar method thus yields compensation of $187,500 (125 hours x $1500 an hour = $187,500).

### B. Analysis of 330(a)(3) Factors:

1. Time Spent.

According to his testimony, the Trustee spent 125 hours on the sale over the two-week period between his appointment and the sale hearing.

2. Rates Charged.

In this case, the Trustee calculated his fee using the commission-based formula in section 326, rather than an hourly rate, but conceded that a lodestar analysis was required in later briefing. As mentioned, the Trustee stated that he has billed as much as $1500 an hour. So the first two factors suggest that the $187,500 lodestar calculation is reasonable.

---

[4] *In re Cahill*, 428 F.3d 536, 539-40 (5th Cir. 2005).
[5] *Id* at 539-40 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *In re Pilgrim's Pride Corp.*, 690 F.3d 650, 655 (5th Cir. 2012).

3. <u>Necessary Services</u>.

In this case, the Trustee was able to orchestrate a competitive bidding process that brought in enough money to pay off all creditors in full in two weeks. In doing so, he prevented the secured creditor from recording a Deed in Lieu of Foreclosure. Had the Deed in Lieu been recorded, there would likely have been no money to pay any other creditors or administrative claims. And so the Court finds that the Trustee's services were absolutely necessary and highly beneficial to the estate.

4. <u>Reasonable Amount of Time</u>.

As discussed, the Trustee successfully sold the property under extreme time pressure, as required due to the pending deadline.

5. <u>Skill</u>.

According to his declaration, the Trustee has served as a chapter 7 panel trustee since 1985 and has been assigned over 37,000 cases in that capacity. He has also served as an instructor on business law and bankruptcy subjects for two universities, and for numerous bar and professional organizations. The Court can easily conclude, and it's not disputed, that the Trustee has demonstrated skill and experience in the bankruptcy field.

6. <u>Customary Compensation</u>.

Outside of bankruptcy, it is typically real estate brokers who perform the services the Trustee performed in this case. In his brief in support of the fee application, the Trustee contends that a 4-6% commission for the sale of complex real estate is customary. He argues that such a commission would result in a higher fee than he is requesting, ranging from $2.14 million to $3.21 million. But the Court has routinely seen broker commissions and breakup fees of much lower than 3% when the transactions are priced at $50 million or higher. Here, in the

context of a $53 million sale that was put together over 2 weeks, the Court finds that a commission of 1% is reasonable. So the lodestar amount should be adjusted upward to $437,124.46, based on distributions of $43,712,446.33 made before the case converted to chapter 7. Further support for the 1% figure can be found by taking judicial notice of the fact that trustees in other WC cases have retained brokers for a 1.5% fee where the sale went to an insider, as was the case here.

### C. Analysis of *Johnson* Factors:

The additional, and somewhat overlapping, factors established by *Johnson v. Georgia Highway*[6] also support adjusting the Trustee's fee upwards, albeit not to the extent the Trustee requests. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the provider; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[7]

1. Time and Labor Required.

As noted, the time and labor required was significant. According to the Trustee's declaration, he spent 125 hours on the sale in two weeks. That's equivalent to about nine hours a day, including weekends. This factor supports an upward departure from the lodestar amount.

---

[6] *Johnson v. Georgia Highway*, 488 F.2d 714, 717-19 (5th Cir. 1974).
[7] *Id.*

2. <u>Novelty and Difficulty of the Questions</u>.

The issues involved were not novel, but the Trustee was faced with a difficult situation. Because of the looming deadline, he had to quickly find a purchaser or risk losing the property to the secured lender, leaving other creditors and administrative claims unpaid. This factor also supports an upward departure from the lodestar amount.

3. <u>Skill Required</u>.

The Trustee adroitly maneuvered the two potential purchasers into an open court auction that caused the bid price to increase by $6.5 million dollars. This is never an easy task and is always fraught with the risk that interested buyers will tire of the process and walk away. Here, the risk was made greater by the time pressure. This factor also supports a substantial upward departure.

4. <u>Preclusion of Other Employment</u>:

The Trustee necessarily spent most of his time working on the transaction during the two weeks between his appointment and the sale hearing. Per his declaration, he devoted 90% of his time to facilitating the sale. This factor also supports an upward departure.

5. <u>Customary Fee</u>.

If we were to convert the lodestar amount, $187,000 to a commission, as would typically be charged by a broker, the commission would amount to about 0.043%. As noted, a customary fee for real estate sales of over 50 million dollars is often significantly less than the 4-6% asserted by the Trustee but would certainly be more than 0.043%. This factor also supports a substantial upward departure.

6. <u>Whether the Fee was Fixed or Contingent</u>.

The fee was contingent on a sale happening. If the Trustee had not been able to sell the property by the deadline, the secured creditor would have recorded the Deed in Lieu of foreclosure and there would have been few, if any, assets remaining to pay administrative claims, including the Trustee's fees. This factor also supports a substantial upward departure.

7. <u>Time Limitations</u>.

As discussed, the Trustee's time limitations were significant. This factor also supports a substantial upward departure.

8. <u>Amount Involved and Results Obtained</u>.

The sale resulted in $53.5 million coming into the estate, an amount that was sufficient to pay off all claims. By facilitating competitive bidding, the Trustee was able to increase the purchase price by $6.5 million. This factor also supports a substantial upward departure.

9. <u>Experience of the Trustee</u>.

As discussed, the Trustee is certainly experienced. This factor also supports an upward departure.

10. <u>Undesirability of the Case</u>.

This case was not undesirable, given the value of the real estate and potential for a significant commission earned in a short amount of time. But the Trustee was operating under some risk. If he had not been able to accomplish a sale, there may not have been funds available to compensate him for his efforts. This factor also supports an upward departure.

11. <u>Length of Professional Relationship with the Client</u>.

Not a factor here. The Trustee was appointed two weeks before the sale.

12. <u>Awards in Similar Cases</u>.

In many of the cases filed by the Debtor's affiliates, the Trustee has hired brokers to sell the properties. In those cases, commissions have typically been 3% if the property is sold to a non-insider and 1.5% if the property is sold to an insider. Because the $187,500 lodestar amount would be equal to a commission of under .05%, this factor also supports a substantial upward departure from the lodestar amount.

A reasonable fee, then, for the disbursements made while this case was in chapter 11 is $437,124.46. The disbursements made now that the case is in chapter 7 should be calculated using the percentages in Section 326(a). The only such disbursement that the Trustee seeks compensation for in this fee application was $71,300.03. Applying the percentages in section 326(a), the Trustee is entitled to a fee of $6,815 based on this disbursement.[8]

ACCORDINGLY, IT IS ORDERED that the Trustee is awarded interim compensation of $437,124.46 for disbursements made as a chapter 11 trustee and interim compensation of $6,815 for disbursements made as a chapter 7 trustee.

# # #

---

[8] According to the Fifth Circuit, this amount is presumptively reasonable compensation for a chapter 7 trustee and the Court finds no exceptional circumstances warrant a reduction of this amount. *Lejeune v. JFK Capital Holdings, LLC (In re JFK Capital Holdings, LLC)*, 880 F.3d 747, 755-56 (5th Cir. 2018).